Recall the cases in the order in which they are calendared. The first one, 0317290, Nocera, Inc. v. ASI Acquisition Corporation. Each side has 10 minutes. Good morning. Good morning, Your Honors. Cherianne Forbes on behalf of Appellants. The facts in this case, Your Honor, are basically procedural in nature. Essentially a complaint was filed against my clients. It was served on him. He asked for a continuous, for the due answer date. He believed that he had that and he operated under that assumption. Did he get a copy of the application for default, for entry of default? For the entry of default, Your Honor, there is no record in, there is nothing in the record that says that he was served with that. Okay. How about the motion for default judgment? The motion for default judgment says that there's a certificate of mailing that says that he was served with it. And he's never contradicted that? He's never contradicted that, Your Honor, no. How do we, I understand he had an understanding that he wouldn't have to answer the complaint. Correct, Your Honor. What I don't get is once they send him something that says we're going to ask for a default judgment, he didn't seem to do anything at that point. Your Honor, he really didn't understand the process that was going on. He had sent a letter on June 4th to Mr. Kirk, a plaintiff's counsel, confirming his understanding that he had an open extension to answer. Right. And basically stating that if the plaintiff was going to file a default, that they would give him an opportunity first to file an answer. And they sent him this motion that they're going to take judgment against him by default, and he did nothing in response to that? Apparently not, Your Honor. At that point in time, he was trying to find the Nocera stock to give back to the plaintiff. In fact, prior to their filing their default judgment, he had given back 50,000 shares. So he was under the impression that while he was trying to find this Nocera stock and give it back to the plaintiff, that he would still have an opportunity to answer before a default was, a default judgment was filed against him. Isn't that understanding inconsistent with having been sent a motion for entry of default judgment? He really didn't understand, Your Honor. He assumed that the attorney was going to call him and let him know that he had a chance to file an answer before that was going to occur. Why didn't he go into the court and say that? Why didn't he communicate with the court at all? At which hearing, Your Honor? At any of them. He had notice of the preliminary injunction hearing, and he didn't even appear at that. He didn't appear at that, Your Honor, because he did not oppose it. He did not oppose a preliminary injunction being placed against him. At this point, Your Honor, he doesn't excuse appearances. He can appear or file something stating non-opposition. You just don't fail to appear. He didn't understand that he had to, Your Honor. He was still working under as a proper person. He had not hired an attorney to represent him in this matter at that point in time. Wait a second. Isn't he an attorney? Pardon me? Your client's Mr. Cashman, right? Yes. Wasn't he an attorney? No, Your Honor. What did he do? He's a businessman, Your Honor. He owns several corporations, but he's not an attorney. Okay. So what is the presumably or purportedly meritorious defense which he thinks he has to offer or defendants think they have to offer? It's laid out in his act, Your Honor. Basically, he was contacted by Mr. Philip Goubet to organize Nocera, and Mr. Goubet was the one that represented that he was authorized to have Mr. Cashman issue these various stocks to various different companies. At some point in time, Mr. Goubet apparently got into some legal trouble abroad, and Mr. Cashman resigned from the corporation at that point in time. But Mr. Cashman at all times believed that he was acting under the direction of someone who had the authority to direct him to issue these stock certificates. Well, who in a corporation is allowed to issue stock? In Nocera, Your Honor? Any corporation under, I assume this is Nevada, Nevada corporate law? Yes, Your Honor. Is this a public corporation or a private corporation? I believe it's a private corporation, Your Honor, but I'm not certain to that. For Nevada state law, who's authorized to issue stock? I believe an officer would be, Your Honor, would be authorized to do that. Do you know that? Do you know that? Have you looked that up? I have not looked that up, Your Honor. I'm sorry. Well, it does not speak to the merit of the defense. I mean, if I came to you and said I'm from General Motors, please issue 100,000 shares of stock, isn't there some obligation to find out if I'm bona fide or if I have the authorization of the corporation? Yes, Your Honor. However, the standard for having a meritorious defense is not a very high one. Mr. Cashman did believe that he was operating properly. He did not intend to do anything wrongful. However, these are the facts that he's averted in his affidavit. And because the standard is not very high, I believe that would constitute at least a meritorious defense. At this point in time, it's not a weighing of the evidence that needs to be considered. It's the fact that it might be a defense to the underlying case. Would you like to reserve some time, ma'am? I'd like to reserve two minutes, Your Honor, for rebuttal. Thank you. And if there are no more other questions, I'll turn it over to opposing counsel. Thank you, Ms. Forbes. Good morning. Joshua Harmon on behalf of Plaintiff Nocera. Here this morning on the defendant's appeal of entry of a default judgment and the district court's decision not to set aside that default judgment, that decision is reviewed for abuse of discretion under three factors, whether there's excusable neglect, whether there's a meritorious defense, and whether the plaintiff will be prejudiced or could be prejudiced by setting aside the default judgment. Here under the first of those factors, I think it's clear that there is no excusable neglect in this case. The defendants knew and were apprised of all legal proceedings that were going on against them. There's a length of time here, several months, through the proceedings taking place. The complaint was filed on April 30th. There's no dispute that the defendants were properly served. There's a letter from Cashman to William Kirk that says, this confirms our discussion in which you've given me an open extension of time to answer. What I believe that says, Your Honor, is that Mr. Cashman received a reasonable time to file an answer to the complaint, and he had more than a reasonable amount of time to file an answer. Well, doesn't it say you won't take default judgment against me without prior notice? Without providing reasonable time to file an answer, Your Honor. Okay. So Cashman sends this letter. William Kirk gets it. Does Kirk ever say that's not our understanding or your time is up or anything like that? No, and we extended more than a reasonable amount of time for the defendants to file an answer. That letter, they were served in the middle of May, between May 5th and May 14th. And default, the application wasn't signed by the district court until August 17th. So the defendants had approximately three months to file or even make any type of appearance or file any type of answer in the district court, and they never did so. I think three months is more than a reasonable amount of time to file an answer. Was defendant, Mr. Cashman or the company, given notice of default before it was entered? Yes, it was, and there's no dispute in the record about that. There's nothing in Mr. Cashman's affidavit claiming that he never received either the entry of default from the clerk or the application of default, and the court's documents are stamped that they were served on the defendants as well. No, it doesn't say that. It says it was served on the parties of record. That's correct, Your Honor.  That means that they'd be served on the parties of record. Well, if they haven't answered, they're not of record. I see. But there's no dispute in the record from Mr. Cashman citing that he didn't receive service of all these documents. Nothing here has been a surprise to Mr. Cashman or any of the other defendants. If he had submitted an affidavit claiming that he never received service of any of the pleadings or the motions, he certainly could have done that and put that in his affidavit and we would have responded accordingly. But he never raised that issue, and he's made no contention that he never received adequate service of any of these documents, Your Honor. At the time he filed his affidavit or declaration, he was still apparently operating without counsel. Is that correct? And if that is correct, he might not know what there was out there to receive. When he signed his declaration, he was represented. That was attached to the motion for the emergency motion for reconsideration that was authored by Mr. Coppedge, who was his counsel for all the defendants. And they never raised an issue that nothing's been served on them, and they had adequate opportunity to review the pleadings that were on file with the district court. All this has been done in the – in fact, in our opposition to their emergency motion to set aside a default judgment, we explained what pleadings had been filed which were served on them, and there's never been any evidence contradicting that or any indication that the defendants claimed that they didn't properly receive any of these documents. Well, on one level, and I'm not sure that it's significant, but as I understand from your brief, the characterization that you give of the discussion between Mr. Kirk and Mr. Cashman is that Mr. Kirk actually told Cashman he would receive notice of default before it was entered, not that he would have unlimited time to file an answer. But the description you just gave me a minute ago didn't suggest that he did receive notice of default before it was entered. If you said he received entry of default from the clerk, did he, in fact, get what Mr. Kirk promised him he would get? What he would be getting, he did get notice prior to the clerk entering. We only filed the request for the clerk to enter default on June 10th. The clerk didn't actually enter default until June 17th. So that's at least a week that the defendants could have appeared and they had proper notice of that. And even then, after the clerk entered default June 17th, the clerk didn't – I'm sorry, the Court did not sign the application for default judgment until August 21st. So there was over a month between that that the defendants could have appeared could have filed some type of answer, could have done anything. I think it's also – I'd like to point out that Mr. Kirk's affidavit also says in June at least two attorneys contacted him claiming that they'd be representing Mr. Cashman. And then we never heard back from either of those attorneys or Mr. Cashman. So it's uncontested as well that Mr. Cashman was in contact with at least two other Who is Philip Goubet? Philip Goubet is not an officer or director of NOSERA. I'm not sure why – what or why Mr. Cashman's relying upon that. But I think that also shows some – Mr. Cashman's improper motivation here. He alleges in his affidavit, Mr. Cashman's affidavit, that Mr. Goubet told him he – Cashman could have stock in exchange for forming a company or paying Cashman $50,000. But there's no evidence that there's ever been some type of authorization from the company, a resolution directing the issuance of shares, nothing like that. And Cashman – Mr. Cashman goes on to explain that this Mr. Goubet who he claims he relied upon to take stock in NOSERA has now been indicted and in prison in Spain for taking $54 million from people that invested money. Well, does your client disavow what Mr. Cashman initially did at the direction of Mr. Goubet, which is to form the Nevada Corporation and to merge it into NOSERA, which made NOSERA public? He was doing some level of work for NOSERA. And on whose instructions was he acting then? It could have been Mr. Goubet's. You're telling me that at some point in time Mr. Goubet was not – was authorized, but at a later point in time he was not authorized? I'm not entirely sure what Mr. Goubet's role in this was, Your Honor. How can you say there's not a meritorious defense if you don't know if Goubet had authority or not? Well, he's – Mr. Goubet has never been an officer director of NOSERA. If he was the one that told him to do the first part of the work, it's not really an unreasonable inference for Mr. Cashman to believe he was authorized to tell him to do the second part of the work, too. There's no evidence to that fact. NOSERA – I haven't heard you say that NOSERA disavows this whole transaction and shouldn't be part of this company. NOSERA hasn't acted like that. There is an affidavit from Mr. Nelson, who is an officer and director of NOSERA, indicating that the stock was not properly issued. Mr. Cashman issued it fraudulently to himself. What was the corporation properly formed? Because what he did, as I understand it from his declaration, is to form a Nevada corporation and merge that into NOSERA, thereby making NOSERA a public corporation. I haven't heard anything saying NOSERA disavows that. And if all of that was done on Mr. Goubet's instructions, it's hard for me to see how NOSERA thinks it can stand back and say, but he wasn't an officer, and say this part counts and this part doesn't. Mr. Cashman is supposed to know the difference. I mean, that doesn't sound like a meritorious defense. Well, I think what's at issue there, Your Honor, is that there's no evidence that Mr. Goubet even said anything like that to Mr. Cashman. There's no affidavit from Mr. Goubet. There's no corporation. Well, that's an entirely different defense. And it doesn't say that the defense is illegitimate. You're saying we haven't proved our defense yet, so the – or rather, we haven't proved our case yet as the plaintiffs, so the defense must be illegitimate. That can't be the case. The fact that the witness hasn't spoken yet doesn't mean the witness is going to speak the way you want him to. I'd just like to point out, there's nothing from Mr. Goubet corroborating that. There's no documentary evidence. There's no corporate resolution saying that Mr. Cashman is entitled to shares. If you looked at the state law, state corporate law or the SEC governs what entity can issue stock in a company, and I believe it's the board of directors, and it has to be done on behalf of the company in an official resolution. And I don't think just individual officers running around a corporation are legally authorized to take shares of stock and give them to people. That just doesn't happen that way. There has to be some kind of a vote. If it's a public corporation, it has to go to the shareholders. So, I mean, the law is, I mean, whether or not Cashman believed he could issue shares in this company, he can't under the law. So I don't understand this whole meritorious defense argument when neither one of you has looked up what the law is. I believe that there is no meritorious defense, Your Honor, because there never has been an officer or director that directed any stock to be issued to Mr. Cashman. Which law governs this, Sarah? My understanding is that it's not a public company from Mr. Cashman's point. It is a public company, Your Honor. So it is a public company. Is it publicly traded? Yes, it is. The ticker symbol is NCRA. Right. Then it has to follow the rules under the stock exchange. Correct. It's just stock. So this is nonsense. That's correct, Your Honor. And we believe that Mr. Cashman is well aware of those requirements. Just from his affidavit, he professes knowledge. He's an international businessman with dealings worldwide. He supposedly claims in his affidavit he was paid going to earn a $50,000 fee for doing this. So clearly he had a high level of expertise. Since June and July, he had been in contact with two other attorneys. He had some type of legal representation even before Mr. Coppedge and the current firm represented him. So we believe that the district court did not abuse its discretion. Thank you, Mr. Herman. We'll hear now again from Ms. Forbes who gets the last word. Ms. Forbes. Your Honor, this is basically about fairness. In June of 2003, June 4th of 2003, Mr. Cashman spoke with Mr. Kirk, thought he had an extension to answer the complaint, wrote a confirming letter to that effect on the same day, never got a response back saying that that was not the case. Later during that same month, he discovered a certificate of 50,000 stocks from Nisera, contacted Mr. Kirk, returned those stocks. Mr. Kirk acknowledges receiving those stocks in his affidavit, the 50,000. Why is Mr. Cashman making such an effort to return all the stocks if he thinks he had a right to distribute them? Your Honor, he was trying to alleviate the complaint. He didn't think that he had any stocks. He was trying to find where they were. He was trying to ---- He didn't think he had stocks. He did not believe he had any stocks at the time the complaint was filed, Your Honor. He started investigating to try and find where the stocks were. He found one certificate in his papers that represented 50,000 shares of Nisera stock. He called Mr. Kirk to return those shares, Your Honor. And he did this on ---- in June. A few days later in July is when Plaintiff's Counsel filed the default judgment application. And so, again, Mr. Cashman was operating on ---- He lost approximately $550,000 worth of stock? I don't know what happened, Your Honor. I just know that he wanted to return it in response to the complaint. And he was trying to do that. And he thought that by doing that, he would be staying within the agreement that he had with Mr. Kirk. Mr. Kirk admits that he told Mr. Cashman that if he returned the stock, that would go a long way towards mitigating the damages against his client and resolving the case. And so Mr. Cashman was in the process of trying to do that when they were going about getting a default judgment against him. And he simply didn't understand that Mr. Kirk was not going to call him and let him know that he needed to file an answer to the complaint. So when it all happened, it did blindside him. And on that regard, Your Honor, I believe that the court below abused its discretion by not putting aside the default judgment. Your Honor, also, I apologize for not looking that statute up. If you would like, I would be happy to send something to the Court stating what the Nevada law is on issuance of ---- It's not governed solely by Nevada law, if at all, because it's a publicly traded company. It might be governed by Nevada law. I don't even know from your argument whether it's traded on the stock exchange or what. So you'll have to figure out which appropriate law would apply. Well, if there are any other questions, Your Honor, I'd be happy to answer them. Otherwise ---- Thank you, Ms. Forbes. Mr. Harmon, thank you. The case just argued is submitted.
judges: Thomas, Silverman, Clifton